Case number 10-3604, Ryan Helweg v. Special Events Management Good morning. The counsel is going to argue. Were you in the court when Justice House addressed the absence of our colleague? I was not. I was. We have allotted 30 minutes for the case. The time will be divided equally. And you want to reserve, the appellant can reserve a rebuttal time from their first argument. You may proceed. Judge Gord will listen to the tape of this argument and make a decision. Justices, I would like to reserve five minutes of my time. Now that's not an amplifier, so the microphone, it just helps us record it so if you want to speak up it would be helpful to us all. May it please the court. Counsel, my name is Carolyn Daly Scott and I represent the plaintiffs in this matter. Justices, this matter involves the dismissal by the trial court of my client's case as a matter of law based upon an exculpatory agreement. My client brought this cause of action for severe injuries he sustained while participating in a closed course cycling event run by the defendants. The question presented is whether the exculpatory agreement signed by the plaintiff prior to participating in this event should be enforceable under the facts presented. My client was a participant in the Tour of Elk Grove, which was a closed course cycling race organized, managed, and run by the defendants. It was comprised of various races beginning on July 31st, 2009 and ending on August 2nd. My client, the plaintiff, was a participant in the charity tent and travel race portion on the 31st. A technical guide for the tour was provided to all of the participants in the tour, including the plaintiff, for the purpose of providing the participants with information regarding the tour, including the course information. This guide stated that the course would be a closed course cycling event, and thus the streets and intersections would be closed for the benefit of the participating cyclists, including the plaintiff. I would like to emphasize that it was a closed course cycling event. You've mentioned it five times already in the first two minutes, and I understand that the issue in this case is really the foreseeability of this type of an occurrence given the waiver that was used, right? Correct. That's what your argument is, that it's not foreseeable under the circumstances. Correct. Now, short of having barbed wire or a 10-foot-high concrete barrier, wouldn't you agree that there is always the chance through either negligence or happenstance that somebody will venture onto a closed course? I agree, Your Honor, but this was not that situation. At this intersection where this accident occurred, there were no barricades whatsoever around. Okay, I understand that. I understand that position. But isn't part of what your client releases releasing the negligence of the organizers? When he releases, in his release, when he contemplated the release, he did not contemplate that they would not present the course as it was represented. But let's just take it one step at a time, because this is the difficulty I'm having with the argument. If you have a circumstance where it is foreseeable that even though it's designated and designed as a closed course, that through things including negligence, it would be penetrable by outsiders, people who shouldn't be there, and since the release itself absolves the organizers for negligence they may commit, isn't it then foreseeable that negligence by them could affect all sorts of things, including the perfection of the closed course? I respectfully disagree. I don't think that the negligence would include not providing the course as they said they would. This is not a situation where a spectator stepped off a sidewalk into the course, where someone went around the barriers, where they didn't have... What if there was a barrier? What if there was a barrier and an off-duty police officer at every intersection? Is it not foreseeable that at a time when the person might have been looking to the right, that some kid on a bicycle could have been bicycling to the left and gone into the intersection? Isn't that foreseeable? You're not going in the brickyard in Indianapolis. You're taking a situation where it's streets, and you're hoping that they're going to be perfectly efficient in keeping people off of the intersection, but there are intersections every, what, eighth of a mile on both sides of the street, and isn't it foreseeable, excuse me, under those circumstances, that there will be less than perfection in the delivery of that? And if the imperfection is due to negligence, not an intentional act, not an invitation to go onto the course, isn't that exactly what is referred to when your client has basically understood and accepted and released them from negligence? I respectfully disagree that this situation where they wholeheartedly fail to erect any barriers, wholeheartedly fail to take any steps to close this intersection, to secure this intersection, this one intersection, it wasn't the entire race course, they failed to do so for this intersection. The situation was, it was their conduct, failing to close an intersection, was not foreseeable. It's not foreseeable at the time of the execution of the risk that the defendants would not provide a course that was a closed course, as they said they would. There was no indication, there was no reason that my client should have foreseen that the defendant's conduct, which is not... What does a closed course mean? A closed course for a cycling event means that intersections are closed to non-participants. By how? By what means? By barricades. This course had erected barricades, Your Honor. How does it mean that barricades were used? Could you close it, you could close it with a variety of things, including somebody saying don't go there, or a sign, right? Correct. Is that a term of art? Your Honor, my understanding is the barricades used at this course, and we also were not permitted to get to discovery, so there's been no evidence on this issue, but my understanding is that the barricades used at this course to close the intersection were metal barricades erected, which are commonly used at events such as cycling races and various running races to close off an intersection so a car, a cyclist, a non-participating person cannot get through that intersection. At this intersection, nothing was erected. That had not been done, and that's not foreseeable at the time of the execution of the release that the defendants would conduct, that the defendants would not close the intersections as they represented they would. When the plaintiff executed the release, he did so with the understanding that it was a closed course event. There was no possible way that he could have foreseen that the defendants would not, in fact, close the course. The defendants' conduct did not fall within the scope of the release, and therefore the risk of my client being injured by a minor riding his bicycle onto the course through this intersection and striking my client does not fall within the scope of this clause, exculpatory clause, excuse me. An exculpatory agreement constitutes an express assumption of risk in that one party is consenting to relieve a party of another particular obligation. Foreseeability is an important element in determining the risks which the party assumes and helps define the scope of an exculpatory agreement. The plaintiff must be put on notice of the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution. I guess with Judge Epstein's initial question, he says he released the organizers from negligence, and the failure to protect this particular intersection might be negligence. Why doesn't that release apply to that failure to protect that particular intersection? Because this is not a danger or a risk that would ordinarily accompany a closed course cycling event. So you're saying that just by use of the phrase closed course, that nobody would think that there would possibly be a failure to be 100 percent effective in closing every intersection. It's inconceivable that somebody who says closed course would do it inefficiently. It is. It's not. That is our position, Your Honor, that upon agreeing to enter into a closed course cycling event, that you would not conceive nor would you reasonably foresee that an intersection would in fact be left open. That's the basis of a closed course cycling event is in fact closing those intersections. I think we're talking past each other, but I understand your point. Are you going to reserve some time? Thank you. Yes, I will reserve my remaining time. Good morning. Good morning. Counsel, may it please the Court, my name is Sarah Brendage, and I represent certain of the appellees. I'm here today advocating on behalf of all of them. My co-counsel, Mr. Zammerman, is also here, but I will be arguing on behalf of all the appellees this morning. Your Honor, to hit the nail on the head, the issue here is foreseeability and whether or not it was foreseeable that by signing the release, Mr. Helwig, the plaintiff here, released the defendant from all negligence, including the fact that a 12-year-old boy may get onto the course during this outgrowth tour. Illinois courts time after time have upheld releases in these situations that contemplate a broad range of accidents and excuse the defendant from acts of negligence associated with the plaintiff's participation in an event like a cycling course. Our Supreme Court in Schlesinger v. Henson, the case that is most on point here, held that parties need not have contemplated the precise occurrence which resulted in the plaintiff's accident, but only that the injury fall within the scope of possibility of dangers ordinarily accompanying an event. In Schlesinger, the Supreme Court held that a signed release barred the plaintiff's claim against a raceway where the plaintiff was injured when a racetrack embasement collapsed onto his car. And just like here, the plaintiff in Schlesinger argued that the collapse of the track was completely outside the scope of plaintiff's expectations and the language in the release. A release that I might add is far less specific than our release here. In any event, the Supreme Court held that the release was valid and barred plaintiff's claims. The Supreme Court held that the release, even though the precise accident, in that case the crash of an embankment, may have been, quote, extraordinary and freakish, was still encompassed by the release. And if the collapse of a superstructure in a race car event, which the Supreme Court says was unexpected and freakish, but still found to be embraced by a less specific release than ours, can be contemplated within the release, then certainly the plaintiff's accident here of running into another rider is less unexpected and freakish, but yet still embraced within our release. The language of our release, that issue here, and it's at page 281 of the record, it's also attached to the plaintiff's brief, states that the plaintiff acknowledged that cycling was an inherently dangerous sport, fully assumed the risks of participating in the bike tour, and the release specifically in column 2, lines 7, 8, and 9, states that the plaintiff acknowledged, by way of example and not limitation, that he was releasing the defendants of dangers associated with collision with pedestrians, vehicles, other riders, and fixed or moving objects. Your Honor, it's not necessary, as the Supreme Court and Schlesman said, that we specifically target the accident here, but we did. And the trial court found specifically at page 7 in volume 5 of the record here that Covado, who's the 12-year-old co-defendant in this case that ran into the plaintiff, was an other rider. He's also a pedestrian. He's also a moving object. Our release specifically contemplated this accident, the accident the plaintiff released defendants' liability for. The plaintiff hit on this idea that it was a closed course. Yes, it was advertised as a closed course. I don't know how someone can be a pedestrian and a rider at the same time, but why don't you go on. Okay. Thank you. This course was advertised as a closed course, and Your Honors had said the issue here was still foreseeability. They're not riding in a tunnel. There wasn't a barricade. There wasn't barbed wire fences here. The plaintiff was riding through residential and commercial neighborhoods in Elk Grove Village. Yes, the course was advertised as closed. We're taking that as we must, as true, because it's alleged by the plaintiff. And while there's a certain environment that one would expect on a closed course, it's also reasonable to assume, and it was certainly contemplated in this case, that the race through residential and commercial streets would involve some interaction with non-race participants. Our release specifically states that. Run-ins with pedestrians, other riders, fixed or moving objects. Quevedo, the co-defendant in this case, is any one of those. Perhaps maybe not a pedestrian, as he wasn't on foot, but he was certainly an other rider, as the trial court found, and he was certainly a moving object. All those examples go back to the fact that the plaintiff, on his own volition, signed this release, releasing all the accolades, sponsors, defendants, of liability for this race. And I would also point out to the court that counsel referenced the technical guide that was provided to all the participants and the neighborhood residents of Elk Grove Village. And in the technical guide, the course, the letter from the village says, throughout the three days of racing, people will be on the parkways and median areas. The racers and the pedestrians and spectators were all advised that there would be interaction from things on the course and off the course during the course. Plaintiffs released the defendants of liability for this exact accident. We would ask, and must the court have any further questions, that the trial court's decision be affirmed. Thank you. Thank you. Your Honor, the Schlesing case was a different case than the case at hand. That case involved a defect in the track. This case is more analogous to the Simpson v. Dragway case. The Simpson case involved a case where a race car driver was driving along a raceway and a deer entered onto the racetrack. He hit the deer and was killed as a result. His family filed suit on his behalf, and the defendants filed a motion for summary judgment based on the exculpatory agreement. The court on appeal in that case, the court found that the set of facts in that case did not encompass what was included in that exculpatory agreement, and the exculpatory agreement did not apply to this set of facts. That is more analogous to this case, whereas in Schlesing, there was a defect in the track. This is not a case where there was a defect in the track, where my client had a pothole, where my client had some mechanical failure. Wasn't there a defect in closing off the course that you're really referring to here? It was a defect in closing off the course, which is not reasonably foreseeable when you sign a release for a closed course event. If it's a closed course event, you're going under the assumption when you execute that release that the intersections will, in fact, be closed. And so you will not be worrying about traffic cutting through these intersections as you're proceeding on this course. If it's not going to be closed off, then the riders and participants would ride a much different course. They'd be looking for traffic. That's not the nature of a closed course event. Furthermore, the plain language of the release does not contemplate the fact pattern here. It does not spell out that the defendants would fail to close the course. The other riders, defendants are focusing on this minor being the other rider that struck my client or a pedestrian. I disagree that this minor would be considered a pedestrian. The minor was on a bicycle. The other rider aspect of the release, I believe it is reasonable that that would be construed to represent other participants, and it would be an inherent risk in a cycling event that you would potentially have an accident with another participant, another rider involved in the accident, or involved in the race, excuse me. The danger in the project. What about a moving object? Isn't someone on a bicycle at the very least a moving object? Or is it stationary, a stationary, a fixed object? I mean, aren't we really back to the foreseeability issue? Because isn't there really very little argument that the language of the release basically says if you hit anything and get hurt, assuming it's within the range of foreseeability that this could occur, that you've waived it? And isn't, as I said at the beginning of your argument, isn't the whole issue in this case, whether this type of negligence, if you call it negligence, or this type of breach in the perfection of the closing of the course, foreseeable? It is not. It's not a foreseeable risk. But isn't that what the case is all about? Whether it is or it isn't. And if I agree with you that it's not foreseeable, you win. And if I disagree and agree with them that it was foreseeable, then you lose. Isn't that what the case is all about? The case is about foreseeability. Okay. And whether or not at the time of the execution of this release, whether or not it was foreseeable that the defendants would not, in fact, close the course as they represented that they would. And failure to close the course is not a foreseeable risk, unless that ordinarily accompanies a closed course. And the defendants failed to close the course. It was not reasonably foreseeable. My client was not put on notice. There was no reason my client should have thought or should have known or could have known that the defendants would not close the intersections as they represented to my client and every other participant in the race that they would. And their failure to do so exposed my client to the risk of being struck by this minor who was permitted onto this course because they failed to close this course. And that risk and that danger is not foreseeable in a closed course. I believe my time is up, unless Your Honors have any other questions. Thank you very much. This matter will be taken under advisement. Thank you very much. We'll argue and we'll leave. Thanks.